**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA          :

      v.          :          **CRIMINAL NUMBER: 08-618**

DANIEL EYSTER          :

**DEFENDANT'S SENTENCING MEMORANDUM**

And now comes Daniel Eyster, by and through his counsel, Benjamin B. Cooper,

Assistant Federal Defender, and submits this memorandum in order to provide information to

assist the Court in fashioning a sentence under 18 U.S.C. § 3553(a) in its entirety, rather than

under the Sentencing Guidelines alone, as required by *United States v. Booker*, 543 U.S. 220

(2005).

**I.    Procedural History**

On March 17, 2009 Mr. Eyster pled guilty to Counts One and Two of the superseding

indictment.  Sentencing is scheduled for July 8, 2009.

**II.    Sentencing Considerations**

As set forth in the Supreme Court's decision in *Rita v. United States*, 551 U.S. 338

(2007), and by the Third Circuit in *United States v. Ricks*, 494 F.3d 394 (3d Cir. 2007),,

sentencing courts must, in every case,

> (1)    properly calculate the Guidelines range;
>
> (2)    rule on any departure motions made under the Guidelines;
>         and
>
> (3)    exercise its judgment and discretion to choose the sentence
>         that best serves all of the sentencing factors set forth in §

3553(a).[1]

*See Ricks*, 494 F.3d at 402.  In arriving at an ultimate sentence, the sentencing court may not

prefer a within-Guidelines sentence over a sentence outside the Guidelines.  *See Nelson v. United*

*States*, — U.S. —, 129 S. Ct. 890, 891 (2009) ("The Guidelines are not only *not mandatory* on

sentencing courts; they are not to be *presumed* reasonable.") (emphasis in original).  *Accord Gall*

*v. United States*, 552 U.S. —, 128 S. Ct. 586, 596-97 (2007) (sentencing courts "may not

presume that the Guidelines range is reasonable."); *Rita v. United States*, 551 U.S. at 351 ("[T]he

sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence

should apply.").

The third step (the heart of post-*Booker* sentencing) requires sentencing courts to give full

consideration to all of the § 3553(a) factors.  At this stage, as the Supreme Court recently re-

emphasized in its summary reversal of the Eighth Circuit in *Spears v. United States*, — U.S. —,

129 S. Ct. 840 (2009), sentencing courts may vary from the Guidelines based on case-specific

---

[1]      The sentencing factors set forth in § 3553(a) include:

- the nature and circumstances of the offense and the history and characteristics of the defendant;

- the kinds of sentence available;

- the Guidelines and policy statements issued by the Sentencing Commission, including the advisory guideline range;

- the need to avoid unwarranted sentencing disparity; and

- the need to provide restitution where applicable.

18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7).

2

considerations, policy reasons alone, or both.  *See Spears*, 129 S. Ct. at 843 ("That was indeed the point of *Kimbrough*: a recognition of district courts' authority to vary from the crack cocaine Guidelines based on *policy* disagreements with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case.") (emphasis in original). The *Spears* court emphasized that the discretion of sentencing courts includes the power to categorically reject the 100:1 crack/powder ratio, and expressly overruled the Third Circuit's contrary holding in *United States v. Gunter*, 527 F.3d 282, 286 (3d Cir. 2008) (*Gunter II*) that "categorical rejection" of the 100:1 crack/powder ratio is prohibited.  *See Spears* at 845 (stating of *Gunter II* and similar cases that "the error of those opinions is . . . evident . . . .").

At base, the overarching goal of this three-part process is the imposition of a sentence "sufficient, but not greater than necessary," to achieve the goals of sentencing – retribution, deterrence, incapacitation, and rehabilitation.  *See* 18 U.S.C. § 3553(a); *Kimbrough v. United States*, 552 U.S. —, 128 S. Ct. 558, 570 (2007).

A.     Procedural Requirements Post-*Booker*

The Court is no doubt familiar with the procedural requirements of post-*Booker* sentencing, as set forth primarily in the Supreme Court's decision in *Rita v. United States*, 127 S. Ct. 2456 (2007) and the Third Circuit's decisions in *United States v. Cooper*, 437 F.3d 324 (3d Cir. 2006) and *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006).  Briefly, sentencing courts must (1) properly calculate the Guidelines range; (2) rule on any departure motions made under the Guidelines; and (3) exercise post-*Booker* discretion by choosing a sentence in light of all relevant Section 3553(a) sentencing factors, "regardless [of] whether [the chosen sentence] varies from the sentence calculated under the Guidelines."  *Gunter*, 462 F.3d at 247.

*Gunter*'s step-three, the heart of post-*Booker* sentencing, requires sentencing courts to give full consideration to all relevant provisions of Section 3553(a). While there are no "magic words" to be uttered or set formulas to be followed, the record must "demonstrate that the court considered the [Section] 3553(a) factors and any sentencing grounds properly raised by the parties which have recognized legal merit and factual support in the record." *Cooper*, 437 F.3d at 329. Thus, when presented with a non-frivolous sentencing argument, the Court must give "meaningful consideration" to both the argument itself and the Section 3553(a) factors relevant to assessing the argument. *Id.* A rote statement of the Section 3553(a) factors, even when coupled with a sentencing court's acknowledgment of the parties' arguments, is insufficient and leads to reversal. *Id.* at 329 & n.6; *United States v. Grier*, 475 F.3d 556, 570-72 (3d Cir. 2007) (*en banc*). Thus, an adequate explanation of the sentence—whether it is within or outside the Guidelines range—must be given.

B.     Determining the Appropriate Sentence Post-*Booker*

While these procedural points are undisputed, since *Booker*, Daniel Eyster and the government have fundamentally disagreed as to how the Court is to determine the appropriate sentence. The government has urged the Court to focus primarily on the Guidelines when determining sentence. The Supreme Court has recently made clear that sentencing in such a Guidelines-centric manner violates *Booker*, *Rita* and Section 3553(a). As discussed below, the Court's "overarching" statutory obligation is to impose the sentence that is minimally sufficient to accomplish the purposes of sentencing. *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). The Guidelines are no more than a "starting point and the initial benchmark". *Gall v. United States*, 128 S. Ct. 586 (2007). After calculating the Guidelines, the Court must consider

4

*all* pertinent factors set forth in Section 3553(a), with no special weight afforded the Guidelines or any other factor.  *See id.* ("the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party").

      1.     *The Court Must Impose the Sentence that is Minimally Sufficient to Accomplish the Statutory Purposes of Sentencing.*

Both the Supreme Court and the Third Circuit have recognized that, post-*Booker*, Section 3553(a) is comprised of two distinct parts:  a sentencing "mandate" contained in the prefatory clause of Section 3553(a) and certain "factors" to be considered in fulfilling that mandate.  18 U.S.C. § 3553(a); *Rita*, 127 S. Ct. at 2463; *Gunter*, 462 F.3d at 244 n.9 (distinguishing between Section 3553(a)'s mandate and sentencing factors).

Section 3553(a)'s sentencing mandate requires this Court to impose a sentence "sufficient, but not greater than necessary," to accomplish the four purposes of sentencing set forth in Section 3553(a)(2)—retribution, deterrence, incapacitation, and rehabilitation.  18 U.S.C. § 3553(a); *Kimbrough*, 128 S. Ct. at 570; *Rita*, 127 S. Ct. at 2467 (parsimony provision is a "requirement" of Section 3553(a)); *Gunter*, 462 F.3d at 244 n.9.  In determining the sentence minimally sufficient to accomplish the purposes of sentencing, the Court must consider several "factors" listed in Section 3553(a):

- the nature and circumstances of the offense and the history and characteristics of the defendant;

- the kinds of sentence available;

- the Guidelines and policy statements issued by the Sentencing Commission, including the advisory guideline range;

- the need to avoid unwarranted sentencing disparity; and

•       the need to provide restitution where applicable.

18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7); *Rita*, 127 S. Ct. at 2463; *Booker*, 543 U.S. at 245;

*Cooper*, 437 F.3d at 329; *Gunter*, 462 F.3d at 244 & n.9.

2.      *District Courts Are Free to Disagree with the Guidelines and Impose a*
        *Contrary Sentence, Which Will Be Reviewed Only for Abuse of Discretion.*

*Rita* made clear that sentencing courts are free to simply disagree with the Guidelines'

recommended sentence in any particular case, and may impose a different sentence based on a

contrary view of what is appropriate under Section 3553(a).  This includes the freedom to

disagree with "policy decisions" of Congress or the Sentencing Commission that are contained

in the Guidelines.  As the Supreme Court noted, "[a]s far as the law is concerned, the judge could

disregard the Guidelines . . . ."  *Rita*, 127 S. Ct. at 2466.  The Court reaffirmed this recently in

*Gall v. United States and Kimbrough v. United States*, both of which emphasized the district

court's authority to impose the sentence it deems appropriate under Section 3553(a).  *Gall*, 128

S. Ct. at 601-02; *Kimbrough*, 128 S. Ct. at 570 ("The Government acknowledges that the

Guidelines 'are now advisory' and . . . 'courts may vary [from Guidelines ranges] based solely on

policy considerations, including disagreements with the Guidelines.'") (quoting government's

brief).

Any sentence outside the Guidelines will be reviewed only for abuse of discretion.  *Rita*,

127 S. Ct. at 2465 ("[A]ppellate 'reasonableness' review merely asks whether the trial court

abused it discretion.").  In *Gall*, the Supreme Court explained that this means that appellate

courts must give "due deference to the district court's decision."  *Gall*, 128 S. Ct. at 597.

Importantly, "[t]he fact that the appellate court might reasonably have concluded that a different

6

sentence was appropriate is insufficient to justify reversal of the sentence." *Id.*

The reason for this broad discretion, and for the court's ability to disagree with the Guidelines, is that the district court "is in a superior position to find facts and judge their import under § 3553(a) in the individual case" because "[t]he sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court." *Gall*, 128 S. Ct. at 597-98. Thus, the courts are not subordinate partners in sentencing, but have their own, independent role to play. As the Supreme Court put it in *Rita*,

> The upshot is that sentencing statutes envision both the sentencing judge and the
> Commission as carrying out the same basic § 3553(a) objectives, the one, at retail,
> the other at wholesale.

*Rita*, 127 S. Ct. at 2463. Because "[d]istrict courts have an institutional advantage" over the Commission and the appellate courts in evaluating individual sentences, their sentences will rarely be disturbed on review. *Gall*, 128 S. Ct. at 598.

      3.     *Giving Any "Preference" to the Guidelines Is the Same as Applying a Presumption in Their Favor at the District Court Level, Which Both the Supreme Court and the Third Circuit Have Prohibited.*

In *Rita*, the Supreme Court made perfectly clear that district courts (unlike appellate courts) *may not* presume that a Guidelines sentence is appropriate or reasonable in any particular case:

> We repeat that the presumption before us is an appellate presumption . . . . In
> determining the merits of these [sentencing] arguments, the sentencing court does
> not enjoy the benefit of a legal presumption that the Guidelines should apply.

*Rita*, 127 S. Ct. at 2465. And in the Third Circuit, even after *Rita*, there is still no presumption of

7

reasonableness for the Guidelines even at the appellate level. *Cooper*, 437 F.3d at 331-32.

Accordingly, the Third Circuit has repeatedly instructed sentencing courts to treat the Guidelines as "simply one factor" among the several co-equal sentencing factors set forth in Section 3553(a):

> The fact is that when a court sentences post-*Booker* and views all of the Section 3553(a) factors, *the guidelines range is simply one factor for it to consider in arriving at the sentence*. The guidelines range may suggest the imposition of a certain sentence of which the court should be aware but *other factors may point to a higher or lower sentence*. Consequently, so long as the court takes each of the factors into account in sentencing, it *may impose a sentence [outside the Guidelines range], provided the sentence is within the statutory range and is reasonable.*

*United States v. Colon*, 474 F.3d 95, 100 (3d Cir. 2007) (emphasis added). *See also United States v. Vampire Nation*, 451 F.3d 189, 196 (3d Cir. 2006) ("[T]he Guidelines are now only one factor among many which can influence a discretionary sentence."); *United States v. Coleman*, 451 F.3d 154, 158 (3d Cir. 2006) ("[T]he Guidelines' recommended range may be modified or disregarded by a district court upon consideration of the other sentencing factors Congress has identified in [Section] 3553(a)."). In *Gall*, the Supreme Court approved those instructions. *Gall*, 128 S. Ct. at 596-99.

This represents a considered and significant demotion of the Guidelines in the sentencing process. While they are still important and must be considered, the Third Circuit in *Colon* aptly summed-up the new reality by describing the Guidelines as "doubly diminished" by *Booker*: not only are they advisory instead of mandatory, but sentencing courts "must give increased attention to the other sentencing factors in Section 3553(a)." *Colon*, 474 F.3d at 97. Thus, even if the Guidelines are a "natural starting point" for the sentencing process, "that circumstance does not mean that a court must build a sentence on the Guidelines and work from there . . . ." *Id.* at 99;

8

see also *Gall*, 128 S. Ct. at 596 ("The Guidelines are not the only consideration, however.").

The government's view that there is a "preference" for Guidelines sentencing that can be overcome only by "unusual circumstances" flies in the face of this clearly-established law.  A "preference" is simply a presumption by another name.  *See Gall,* 128 S. Ct. at 595 ("We reject . . . [a rule] that requires 'extraordinary circumstances to justify a sentence outside the Guidelines range" because "it comes too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range.").  Moreover the purported need for unusual circumstances to sentence outside the Guidelines range confuses *departures* under the Guidelines (which still require extraordinary circumstances post-*Booker*) with *variances* from the Guidelines.  Variances have nothing to do with "unusual circumstances," and may be granted when departures are not only unwarranted, but even affirmatively *prohibited*.  *United States v. Severino*, 454 F.3d 206, 211 (3d Cir. 2006); *see also Gall*, 128 S. Ct. at 601-02 (approving consideration of age and immaturity and family circumstances).

Thus, it is simply untrue that the Court must find "unusual circumstances" before it may sentence below the Guidelines range.  *Gall*, 128 S. Ct. at 595.  The Court may, indeed *must*, sentence below the range whenever it determines that such a sentence is sufficient to accomplish the goals of sentencing.  *Gall*, 128 S. Ct. at 596-97.  Were it otherwise, post-*Booker* sentences would be "buil[t]" on the Guidelines "to such a degree that the now-advisory guidelines tie the court's hands and, *de facto*, again become mandatory."  *Colon*, 474 F.3d at 99.

4.    *There Is No "Presumption of Unreasonableness" for Sentences Outside the Guidelines.*

The Supreme Court has also made clear that a sentence outside the recommended

9

Guidelines range is not "suspect" or particularly susceptible to being reversed on appeal as long as it is "adequately explain[ed] . . . to allow for meaningful appellate review and to promote the perception of fair sentencing."  *Gall*, 128 S. Ct. at 597; *see also Cooper*, 437 F.3d at 329; *United States v. Jackson*, 467 F.3d 834, 842 (3d Cir. 2006).  Thus, "just as a sentence within [the Guidelines] range is not presumptively reasonable, a sentence outside of it is not presumptively *un*reasonable."  *United States v. Schweitzer*, 454 F.3d 197, 204 (3d Cir. 2006) (emphasis added); *Rita*, 127 S. Ct. at 2467 ("The fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness.").

In highlighting this principle, the Supreme Court in *Gall* has called into question those few cases in this Circuit in which sentences have been reversed as unreasonable.  *See, e.g., United States v. Tomko*, 498 F.3d 157 (3d Cir. 2007); *United States v. Goff*, 501 F.3d 250 (3d Cir. 2007).  Like the Eighth Circuit which was reversed in *Gall*, the Third Circuit in these two cases "engaged in an analysis that more closely resembled *de novo* review of the facts presented and determined that, in its view, the degree of variance was not warranted."  *Gall*, 128 S. Ct. 600.  This is inappropriate.  As the Court said in *Gall*,

> The Court of Appeals clearly disagreed with the District Judge's conclusion that consideration of the § 3553(a) factors justified a sentence of probation; it believed that the circumstances presented here were insufficient to sustain such a marked deviation from the Guidelines range.  But it is not for the Court of Appeals to decide de novo whether the justification for a variance is sufficient or the sentence reasonable.  On abuse-of-discretion review, the Court of Appeals should have given due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence.

128 S. Ct. at 602.  This Court is therefore free to impose the sentence it deems appropriate – even if substantially below the Guidelines range –  without concern that its reasoning will be

vulnerable on appeal.

      5.     *Even if District Courts Could Give the Guidelines Heightened Importance, There is No Basis for Giving Them More Weight Than Any Other Factor.*

The government claims special treatment for the Guidelines because they comprehensively examine the full panoply of sentencing considerations, represent decades of nationwide experience and study, and are the only measure for avoiding unwarranted sentencing disparities. This is little more than myth, and courts are free to disregard the Guidelines when they are not apt, either as a general matter or in an individual case. *Gall,* 128 S. Ct. at 596-97 & 601-02; *Kimbrough*, 128 S. Ct. at 564 & 574.

      a.     The Guidelines Are Not Designed to Accomplish the Statutory Purposes of Sentencing and Do Not Encompass all of the Section 3553(a) Factors

While the Sentencing Commission has made a "serious effort" to reflect the objectives of Section 3553(a) in the Guidelines, *Rita*, 127 S. Ct. at 2463, the government grossly overstates the degree to which the Commission succeeded in this endeavor. The Sentencing Commission itself acknowledged, when first promulgating the Guidelines, that it was impossible to devise a guidelines system that captures and accounts for "the vast range of human conduct potentially relevant to a sentencing decision." U.S.S.G. ch. 1, pt. A(4)(b) (1987). "[T]he guidelines are inescapably generalizations" that "say little about the 'history and characteristics of the defendant.'" *United States v. Jiménez-Beltre*, 440 F.3d 514, 527 (1st Cir. 2006) (Lipez, J., dissenting) *see also Rita*, 127 S. Ct. at 2465 (characterizing the Guidelines as "rough approximations of sentences that might achieve § 3553(a) goals").

In the introduction to the first Guidelines Manual in 1987, the Commission acknowledged

it was unable to take each of the purposes of sentencing into account in crafting the Guidelines. *See* U.S.S.G. ch. 1, pt. A(3) (1987).  The Commission considered trying to account for only two purposes, which it described as "just deserts" [sic] and "crime control."  *Id.*  It candidly acknowledged, however, that because it was unable to tackle the "profoundly difficult" "philosophical problem" of reconciling the interplay of even *those two* sentencing purposes, it simply abandoned their use in favor of a system based "by and large, [on] typical past practice, determined by an analysis of 10,000 actual cases."  Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L. Rev. 1, 7 (1988) (footnote omitted).  As another original commissioner explained, "[r]ather than being guided by the statutory purposes of sentencing, the guideline drafting reflected simply a haphazard 'fiddling with the numbers' that established the guidelines sentences."  *Dissenting View of Commissioner Paul H. Robinson on the Promulgation of Sentencing Guidelines by the United States Sentencing Commission*, 52 Fed. Reg. 18,121, 18,122 (May 1, 1987).

In the end, the Commission chose to increase sentences for some offenses, but not others, through a series of "'tradeoffs' among Commissioners with different viewpoints."  Breyer, 17 Hofstra L. Rev. at 19; *id.* at 23 ("[O]nce the Commission decided to abandon the touchstone of prior past practice, the range of punishment choices was broad").  Although the Commission may very well have done the best it could have under the circumstances, it is abundantly clear that the Guidelines ranges are *not* the product of a balancing of the sentencing purposes every judge is required to consider under Section 3553(a)(2).  *See, e.g., Kimbrough*, 128 S. Ct. at 575 (noting that crack guidelines do not take account of "empirical data and national experience").

In addition to their failure to take account of—much less carefully balance—each purpose

of sentencing listed in Section 3553(a)(2), the Guidelines also fail to differentiate between defendants with respect to the other Section 3553(a) factors that judges must consider.  Of particular note, they do not do so with respect to a vital component of subsection (a)(1)—the "history and characteristics of the defendant."  From the beginning, the Guidelines have produced sentencing ranges that take into account one narrow slice of a defendant's "history and characteristics":  the aggravating factor of prior criminal history.  *See generally* U.S.S.G. ch. 4.  The Guidelines ranges do not incorporate any other offender characteristics or any other aspects of their history.  Instead, to the extent the Commission has addressed these factors, it expressly discourages or outright prohibits judges from considering them when computing a Guidelines range or when deciding whether to impose a Guidelines sentence.[2]

Although the original commissioners "extensively debated" whether the Guidelines ranges should be affected by offender characteristics beyond the defendant's criminal record, Breyer, 17 Hofstra L. Rev. at 19, they were unable to reach a consensus and therefore decided "to leave other characteristics out."  Stephen Breyer, *Federal Sentencing Guidelines Revisited*, 11 Fed. Sent. R. 180, 185 (1999).  Thus, as with the purposes of sentencing, it cannot be said that the Guidelines reflect a consideration of all of the sentencing factors in Section 3553(a)—particularly not the history and characteristics of the defendant.

        b.     The Guidelines Do Not Reflect Years of Experience and Empirical Study, And Instead Have Evolved Without the Benefit of Meaningful Input from District Courts

---

[2]     These characteristics include, among others, family ties and obligations, U.S.S.G. § 5H1.6, military service, *id*. at § 5H1.11, community good works, *id*., addictions and other dependencies, *id*. at § 5H1.4, and duress relating to "personal financial difficulties and economic pressures upon a trade or business," *id*. at § 5K2.12.

When the original Commission determined it could not base the Guidelines on a principled application of the statutory purposes of sentencing, it intended to make up for that shortcoming in later revisions to the Guidelines.  The Commission saw its original product as "but the first step in an evolutionary process."  U.S.S.G. ch. 1, pt. A(3) (1987).  The Guidelines were to be refined along two fronts by:  (1) incorporating the findings of the Commission's "continuing research, experience, and analysis," *id*. at pt. A(2); and (2) developing a sentencing "common law," whereby judges would "remain free to depart from the Guidelines' categorical sentences," transmitting their reasons for doing so to the Commission, which would then revise the Guidelines to incorporate the common practices of the judiciary.  Breyer, 11 Fed. Sent. R. at 183, 185; *see also Booker*, 543 U.S. at 263.

In the early years of Guidelines sentencing, judges began the dialogue envisioned by the original Commission by departing from the Guidelines when the ranges did not adequately account for the individualized circumstances of the cases before them.  But, as one commentator recently noted, "the idea that feedback from front-line sentencing actors is an important component of the federal sentencing model has somehow been lost.  Instead, . . . sentences outside the otherwise applicable guidelines range have come to be viewed as illegitimate, even deviant."  Frank O. Bowman, *The Year of Jubilee . . . Or Maybe Not: Some Preliminary Observations About the Operation of the Federal Sentencing System After* Booker, 43 Hous. L. Rev. 279, 321 (2006).

The Commission has also tried to impose uniformity in situations where the rate of downward departures reflects the view that a particular Guidelines range often calls for a sentence greater than necessary to serve the purposes of sentencing.  Instead of giving judges

greater flexibility to take into account the factors motivating downward departures, the Commission has reacted by severely curtailing—or eliminating altogether—sentence reductions based on the cited factor.  For instance, the high rate of downward departures in career offender cases has long been a symptom of the shortcomings in that Guideline.  U.S. Sentencing Commission, *Final Report on the Impact of* United States v. Booker *on Federal Sentencing* (Mar. 2006) ("*March 2006 Booker Report*") at 137.  Part of the explanation is that the Commission's expansive definition of predicate "crimes of violence" equates defendants with truly violent histories and those who have committed much less serious offenses.  The Commission responded to these frequent downward departures from the career offender guideline by severely and categorically limiting their magnitude.  U.S.S.G. App. C, amend. 651 (2003) (limiting downward departures based on overstatement of the criminal history of career offenders to a single criminal history category).  As a result, district judges continue to find it necessary to sentence below the Guidelines range in a significant number of career offender cases.  *See March 2006 Booker Report* at 137.

Rather than demonstrating an organic and even-handed development of sentencing practice, the amendment process has been notable for its relentless addition of factors that serve to increase offense levels and further restrict the ability of judges to consider, among other things, the history and characteristics of defendants.  The Guidelines have been amended 696 times.  U.S.S.G. App. C (2006).  But only a handful of these changes have operated to decrease the length of sentences.  *See* Amy Baron-Evans, *The Continuing Struggle for Just, Effective, and Constitutional Sentencing After* United States v. Booker*:  Why and How the Guidelines Do Not Comply with § 3553(a)*, 30 Champion 32 at n.39 (2006).  The cumulative effect of the remaining

15

changes has been a "one-way upward ratchet" in sentencing.  Frank O. Bowman, *The Failure of the Federal Sentencing Guidelines: A Structural Analysis*, 105 Colum. L. Rev. 1315, 1319-20 (2005).

This consistent increase in the length of prison sentences has not been accompanied by empirical data that tie the increases to the purposes of sentencing.  *See Gall*, 128 S. Ct. at 594 n.2 ("Notably, not all of the Guidelines are tied to this empirical evidence.").  And on the few occasions the Commission has conducted the requisite research—most notably with respect to rates of recidivism—the results often *undercut* the Guidelines.[3]  The Commission's recidivism research demonstrates that many of the offender characteristics the Guidelines rule off-limits—age, educational level, employment status, and so on—are indeed strong predictors of recidivism rates.  *See id*. at 16 ("Investigations using the recidivism data suggest that there are several legally permissible offender characteristics which, if incorporated into the criminal history computation, are likely to improve predictive power.").  Yet the ranges computed under the Guidelines do not account for any of these offender characteristics.

c.      The Guidelines Do Not Even Secure Meaningful Uniformity in Sentencing

Perhaps the most intuitively appealing of the government's claims is that abiding by the Guidelines is the only way to avoid sentencing disparity.  The Supreme Court rejected the this argument in *Gall* and *Kimbrough*, noting that "our opinion in *Booker* recognized that some departures from uniformity were a necessary cost of the remedy we adopted."  *Kimbrough*, 128

---

[3]      *See* U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* ("*Measuring Recidivism Report*") at 1 (2004), *available at* http://www.ussc.gov/publicat/-recidivism_general.pdf.

S. Ct. at 574.  The Court held that Section 3553(a) requires only that district courts *consider* the need to avoid unwarranted disparities, as opposed to prioritizing it.  Moreover, the Court held that  when a judge simply calculates and reviews the appropriate Guidelines range, he or she "necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities."  *Gall*, 128 S. Ct. at 599.  After that, the Court emphasized,  judges must also consider the other Section 3553(a) factors, including the equally important "need to avoid unwarranted *similarities*" among defendants that the Guidelines frequently inflict.  *Id.* at 600 (emphasis in original).

In any event, the supposed uniformity created by the Guidelines is illusory.  In a number of ways, the Guidelines have perpetuated and even aggravated the problem of unwarranted disparities.  As the Sentencing Commission has recognized, "unwarranted disparity" means the "different treatment of *individual* offenders who are similar in relevant ways, or similar treatment of *individual* offenders who differ in characteristics that are relevant to the purposes of sentencing."  *Fifteen Year Report* at 113 (emphasis in original).  The Guidelines, by limiting consideration of numerous factors and circumstances (including the offense and offender factors mentioned above), have increased the second type of unwarranted disparity—the like treatment of cases that are not truly alike.[4]

The Guidelines also suffer severe shortcomings in addressing the other type of

_____

[4]     Ilene Nagel, one of the original commissioners, acknowledged this problem—she dubbed it the "overreaching uniformity" of the Guidelines—noting that "the emphasis [in creating the first set of guidelines] was more on making sentences alike, and less on insuring the likeness of those grouped together for similar treatment."  Nagel, *Structuring Sentencing Discretion:  The New Federal Sentencing Guidelines*, 80 J. Crim. L. & Criminology 883, 934 (1990).

disparity—different treatment of individual offenders who are similar in relevant ways.  One of the biggest causes of this type of disparity is the practice of charge and fact bargaining in connection with guilty pleas.  Numerous studies have confirmed that because such bargaining occurs in a sizable number of cases, Guidelines ranges for defendants who should be identical in the eyes of the Guidelines will often be different.  One such study conducted by the Federal Judicial Center found that three-quarters of district judges reported that plea bargaining is a "source of hidden unwarranted disparity in the guidelines system."  Federal Judicial Center, *The U.S. Sentencing Guidelines: Results of the Federal Judicial Center's 1996 Survey* at 7, 9 (1997).

Congress recognized that judges would need to consider more than the kinds of unwarranted disparity against which the Guidelines can protect.  It thus required them to "consider" the problem of disparity, 18 U.S.C. § 3553(a)(6), *in addition to* consideration of the Guidelines range, in each individual case.  Thus, the assumption that the Guidelines account for this and other Section 3553(a) factors cannot be squared with the structure of the statute, any more than it can be squared with the way the Guidelines were created.

**III.    The Sentencing Factors as Applied to Daniel Eyster:**

Mr. Eyster is now 49 years old.  In this case, police entered Mr. Eyster's home pursuant to a search warrant.  When police arrived at Mr. Eyster's home he was not present and was contacted by his mother and returned from work.  Mr. Eyster then spoke with agents and agreed to assist in the search and cooperate.  Mr. Eyster also agreed to answer questions about his computers and the child pornography collection that was contained within them.

Mr. Eyster is an experienced truck driver who has a commercial drivers license.  He has had a steady work history and has removed himself from joint ownership of the home in which

he was residing.  Mr. Eyster will be subject to severe civil penalties as a result of this conviction.

Among those penalties could be involuntary confinement under The Adam Walsh Act.

In this case, there are no objections to the sentencing guidelines calculations.  Therefore, the applicable guideline range is 360 - life and a mandatory minimum of 25 years.  In consulting and taking into account the guidelines, the Court should consider that the guidelines were developed to advance sentencing reform goals of reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparence of punishment.  See United States v. Baird, 580 F.Supp 2d 889, 894 (District of Nebraska 2008). The United States Sentencing Commission used data on past practice and recidivism in formulating the guidelines to meet the purposes of punishment.  Based on sentencing statistic the Commission established the offense levels for each crime linked to a recommend imprisonment range.  However, for policy reasons and because statutory mandatory minimums determined many terms of the guidelines the Commission departed from past practices in setting offense levels for such crimes as fraud, drug trafficking, child crimes and sexual offenses.  See Baird at 894, quoting United States v. Kimbrough, 128 S.Ct. 558, at 567 (2007).  Consequently, the guideline ranges of imprisonment for those crimes are a less reliable appraisal of a fair sentence. Kimbrough at 574.  The guidelines for these types of offenses were not developed under any empirical approach, but were promulgated, for the most part, in response to statutory directives. See U.S.S.G. App. C, amends. 537 and 538 (November 1, 1996), 592 (November 1, 2000) 615 (November 1, 2001), 651 (October 27, 2003), 664 (November 1, 2006).  The Commission itself acknowledged that the frequent mandatory minimum legislation and specific directives to the commission to amend the guidelines make it difficult to gauge the effectiveness of any particular

19

policy change, or to disentangle the influences of the commission of those from congress. Because the guidelines do not reflect the commissions unique institutional strengths, the Court can afford them less deference than it would be to empirically-grounded guidelines.  <u>United States v. Baird</u>, 580, F.Supp 2d 889, at 894 and 895.

A sentence to the mandatory minimum of 25 years will deploy significant punishment that will reflect the seriousness of the offense, provide deterrence and protect the public.  In facct, the mandatory minimum is derived from the offense conduct and from Mr. Eyster's criminal history.  Further, this will be a serious sentence considering Mr. Eyster's age (49) and the fact that his mother, who may be suffering from mild dementia has no close active care takers other than Mr. Eyster.  Mr. Eyster freely admitted to his involvement in the offense and freely cooperated when they searched his house.  Because of his age, this sentence of 25 years will be lengthy will serve the statutory goals of sentencing.  For the aforementioned reasons, Mr. Eyster requests a sentencing of the mandatory minimum applicable.

## IV.    The Minimally-sufficient Sentence in this Case

As discussed above, *Booker* and Section 3553(a) impose a statutory cap on sentences, no matter what is recommended under the Guidelines:  the sentence must be "sufficient, but not greater than necessary" to accomplish the sentencing purposes of retribution, deterrence, incapacitation, and rehabilitation.  Here, it is respectfully submitted that these purposes can be achieved by a below-Guidelines sentence.

Respectfully submitted:

_/s/ Benjamin B. Cooper_
BENJAMIN B. COOPER
Assistant Federal Defender

## CERTIFICATE OF SERVICE

I, Benjamin B. Cooper, Esquire, Assistant Federal Defender, Federal Court Division, Defender Association of Philadelphia, hereby certify that I have served a copy of the Defendant's Sentencing Memorandum, upon Frank Labor, Esquire, Assistant United States Attorney, 615 Chestnut Street - Suite 1250, Philadelphia, PA 19106.

_____/s/ Benjamin B. Cooper_____
BENJAMIN B. COOPER
Assistant Federal Defender

Date: ___July 1, 2009_____